IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 26-cv-0712-WJM

ALFREDO GRANILLO CHAVARRIA,

    Petitioner,

v.

JUAN BALTASAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

    Respondents.

---

## ORDER GRANTING HABEAS CORPUS PETITION

---

    Before the Court is Petitioner Alfredo Granillo Chavarria's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and Motion for Temporary Restraining Order ("Motion") (ECF No. 4).  Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; Robert Gaudian, in his official capacity as Field Office Director, Denver Field Office, of U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; Todd Lyons, in his official capacity as Acting Director of ICE; and Pam Bondi, in her official capacity as Attorney General of the U.S. Department of Justice (collectively, "Respondents" or "the Government"), filed a response.  (ECF No. 14.)  Granillo Chavarria filed a reply.  (ECF No. 15.)

    For the following reasons, the Petition is granted.

## I. BACKGROUND

Granillo Chavarria is a noncitizen who has lived in the United States since 2011. (ECF No. 1 at 1, 2, 4.)  He is common law married and the father of two U.S. citizen children, ages three and seven, and two U.S. citizen stepchildren, ages 19 and 17.  (*Id.*) Granillo Chavarria works in the construction industry and has maintained steady employment to support his family.  (*Id.*)  He has had no contact with the criminal justice system that would subject him to mandatory detention.  (*Id.*)  Despite all this, in October 2025, ICE arrested and detained Granillo Chavarria after he dropped off his seven-year-old son at school.  (*Id.*)

In December 2025, Granillo Chavarria sought a bond hearing as a member of the class in *Maldonado Bautista v. Santacruz*, — F.Supp.3d —, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025).  (*Id.*)  In January 2026, an Immigration Judge ("IJ") agreed that Granillo Chavarria is a member of the *Maldonado Bautista* class and is therefore eligible for custody redetermination under 8 U.S.C. § 1226(a).  (*Id.*)  The IJ ultimately found that Granillo Chavarria does not pose a flight risk or danger to the community.  (*Id.*) Accordingly, the IJ ordered that Granillo Chavarria be released upon posting a $45,000 bond.  (*Id.*)

A day later, and before Granillo Chavarria could post bond, ICE filed an E-43 Form.  (*Id.*)  That document invokes a regulation that automatically stays the IJ's bond order pending DHS's appeal of that order to the Board of Immigration Appeals ("BIA"). The automatic stay regulation states as follows:

> **Automatic stay in certain cases.** In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be

> stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).  Granillo Chavarria remains in custody as a result of this regulation.

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases]."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Granillo Chavarria contends that the Government's invocation of 8 C.F.R. § 1003.19(i)(2), the automatic stay regulation, violates his procedural and substantive due process rights, as well as the Administrative Procedure Act ("APA").  (ECF No. 4 at 8–13.)  He also asks the Court to "enjoin Defendants from jailing [him] pursuant to §

3

1225(b)(2) . . . ." (*Id.* at 2.) The Court agrees that the Government's application of 8 C.F.R. § 1003.19(i)(2) has violated Granillo Chavarria's procedural due process rights. Accordingly, he must be immediately released.

As a threshold matter, the Court observes that the Government posits that a noncitizens' procedural due process rights end at the point they request bond from an IJ and have had the opportunity to appeal any adverse bond decision to the BIA. (*See* ECF No. 14 at 8 ("The process for evaluating bond for aliens—the very process currently playing out before the BIA here—provides the requisite notice."); *see also id.* ("Petitioner has not shown that he is not receiving notice and opportunity to be heard as to bond, and has thus not made out a procedural due process violation.").) Contrary to this position, however, the Court concludes that the *Mathews v. Eldridge*, 424 U.S. 319 (1976) test properly governs this procedural due process challenge.

This is not a remarkable conclusion. On the contrary, it is in keeping with several other court decisions, including in this District, that have applied the *Mathews* standard in immigration habeas cases. *See Merchan-Pacheo v. Noem*, 2026 WL 88526, at *4 (D. Colo. Jan. 12, 2026) (thoroughly rejecting argument that the *Mathews* test does not apply in similar circumstances); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) (applying *Mathews* in a similar context and observing that "Tenth Circuit precedent demonstrates that the *Mathews* test is appropriate when determining what process is constitutionally due"); *Vizguerra-Ramirez v. Baltazar*, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) (applying *Mathews* in a similar context); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and noting that, "when considering due process challenges to [discretionary noncitizen detention,] other circuits

4

. . . have applied the *Mathews* test"); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (applying *Mathews* test to section 1226(a) challenge); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same); *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1185 (D. Minn. 2025). Persuaded by this reasoning, the Court proceeds to apply the *Mathews* factors to this case.

Under *Mathews v. Eldridge*, courts must consider three factors when evaluating whether a petitioner has made out a procedural due process violation: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors strongly support Granillo Chavarria's position that 8 C.F.R. § 1003.19(i)(2) violates his procedural due process rights. First, Granillo Chavarria's private interest in this case is beyond dispute: As a result of the automatic stay regulation, Granillo Chavarria has lost his freedom for several months—despite the fact that an IJ determined that he did not pose a risk of flight or danger sufficient to deny bond. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Vizguerra-Ramirez*, 2025 WL 3653158, at *13 (same); *Carlon v. Kramer*, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025) (same); *Gunaydin*, 784 F. Supp. 3d at 1187 (same); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (finding, in assessing the first *Mathews* factor, that

"[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial.  He was locked up in jail.  He could not maintain employment or see his family or friends or others outside normal visiting hours."); *Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects").

Granillo Chavarria's loss of freedom comes at significant cost.  Despite not being accused of committing any crime, the Government is detaining Granillo Chavarria in a facility that the undersigned has already found "strongly resemble[s] penal confinement."  *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025).  Moreover, as a result of the automatic stay regulation, the Government has separated Granillo Chavarria from his family and made it practically impossible for him to financially provide for his dependents.  Given all this, the first *Mathews* factor strongly supports Granillo Chavarria's procedural due process claim.

Second, the likelihood that the Government is erroneously depriving Granillo Chavarria of his right to freedom is especially high in these circumstances.  Indeed, "the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing."  *Carlon*, 2025 WL 2624386, at *3; *Gunaydin*, 784 F. Supp. 3d at 1187 (same).  Yet despite prevailing at his bond hearing, the automatic stay provision allowed the Government to effectively disregard the IJ's custody determination and deprive Granillo Chavarria of his liberty anyway.  Put another way, "the automatic stay

6

regulation empowers ICE—the losing party in the bond hearing—to unilaterally override the decision of the [Immigration] Judge and keep the noncitizen detained pending appeal. Such a rule allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge." *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 32 (D. Mass. 2025)*.*

"Other courts considering the automatic stay provision have found this problematic as well." *Carlon*, 2025 WL 2624386, at *3; *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077–78 (N.D. Cal. 2004) (recognizing that "[a] unilateral determination made by the [Immigration and Naturalization] Service attorney that effectively overrules the reasoned decision of the Immigration Judge poses a serious risk of error" in that "it conflates the functions of adjudicator and prosecutor"); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (explaining that the automatic stay regulation produces a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture").

Nevertheless, the Government maintains that "further review by the BIA will enhance, not reduce, the accuracy of a bond decision, and this factor thus does not weigh in favor of a due process violation." (ECF No. 14 at 10.) But this argument disingenuously confuses the issue. The Government does not need the automatic stay provision to challenge the IJ's bond determination before the BIA. It can simply appeal the IJ's bond determination while Granillo Chavarria enjoys his freedom as that appellate procedure plays out.

7

Moreover, the Government's argument "frames the concern for accuracy solely in [its own] favor . . . ." *Rivas*, 2026 WL 444732, at *3. "[T]he traditional due process concern with accuracy . . . is meant to protect *the individual interest*." *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986) (emphasis added); *see also Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance . . . .").

Frankly, the Court is far more concerned that Granillo Chavarria will be erroneously detained pending appeal than by the prospect of the IJ's decision being reversed while he is released on (in the Court's view, an outrageously expensive) bond. *See Rivas*, 2026 WL 444732, at * 3 ("In matters such as this, the concern for accuracy is that individuals will erroneously be deprived of their liberty—the paramount interest at stake—as opposed to a concern with the accuracy of an IJ's determination that an individual is not a danger or a flight risk.").

Perhaps of greatest concern, "[t]he automatic stay regulation also inverts the traditional burdens and standards governing requests for stays pending appeal." *Sampiao*, 799 F. Supp. 3d at 32. Specifically, the automatic stay provision gives the Government *carte blanche* to keep noncitizens detained regardless of the particular circumstances of a given case. "Ordinarily, to obtain a stay of a judge's order requires a party to, *inter alia*, make 'a strong showing' that it is likely to succeed on the merits of its challenge to that order." *Maza v. Hyde*, 807 F. Supp. 3d 42, 49 (D. Mass. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). By contrast, the automatic

8

stay regulation "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Gunaydin*, 784 F. Supp. 3d at 1187; *see also Vizguerra-Ramirez*, 2025 WL 3653158, at *14 (finding that these circumstances unfairly put petitioners "in the more difficult position of proving a negative—that is, proving that [they are] neither a flight risk nor a danger to the community"); *Choate*, 744 F. Supp. 3d at 1183–84 (same).  "By flipping the traditional rules governing requests to stay pending appeal, the automatic stay regulation invites significant risk of error in decisions that deprive individuals of their liberty." *Sampiao*, 799 F. Supp. 3d at 33.

What's more, the automatic stay regulation is not the Government's only available tool for keeping a noncitizen detained after an IJ's bond determination: The Government may also "request a discretionary emergency stay from the BIA." *Carlon*, 2025 WL 2624386, at *4; *see also* 8 C.F.R. § 1003.10(i)(1) (granting BIA discretionary stay authority); *Gunaydin*, 784 F. Supp. 3d at 1190 ("Respondents' interest in preserving the automatic stay regulation is almost entirely, if not entirely, reduced by the mechanisms already in place for requesting an emergency stay from the BIA.").  "This procedure, at minimum, mitigates the concern about DHS usurping the neutral adjudicatory role of an Immigration Judge and provides additional safeguards that the automatic stay provision lacks." *Merchan-Pacheo*, 2026 WL 88526, at *15.  Given all this, the second *Mathews* factor favors Granillo Chavarria as well.

Third and finally, the Government does not have a significant interest in keeping Granillo Chavarria detained by way of the automatic stay regulation.  The Government suggests that its interest in keeping Granillo Chavarria detained is strong because he

9

may flee if released pending appeal, which "could render the review process illusory." (ECF No. 14 at 10.)  But the Government's stated concern is misplaced because an IJ has already found that Granillo Chavarria does not pose a flight risk sufficient to deny bond.  As such, the Government's stated interest here is unsubstantiated and based on nothing more than mere conjecture.

For all these reasons, the Court concludes, based on the *Mathews* factors, that Granillo Chavarria has established that the Government's use of the automatic stay regulation offends his procedural due process rights.  Accordingly, he is entitled to immediate release, upon the posting of bond, from his unlawful detention.

## IV.   REMAINING ARGUMENTS

Given the Court's conclusion that 8 C.F.R. § 1003.19(i)(2) violates Granillo Chavarria's procedural due process rights, it need not consider whether the automatic stay regulation also violates Granillo Chavarria's substantive due process rights and the APA.

Relatedly, the Court declines, at this time, to address Granillo Chavarria's request that it enjoin the Government from re-arresting him pursuant to section 1225(b)(2)(A).  While the Court acknowledges that this statute is the driving force behind the Government's position on appeal before the BIA, it is undisputed that this statutory authority is not itself responsible for Granillo Chavarria's current detention.  As Granillo Chavarria acknowledges, the "automatic stay [is] the but for cause of his detention."  (ECF No. 15 at 10 (citation and internal quotation marks omitted).)  And he points to no authority permitting the Court to issue what would essentially be an advisory opinion on the applicability of section 1225(b)(2)(A) in this case.  (*Id.* at 11.)

(That said, the Government is clearly aware that the Court has already repeatedly weighed in on this issue.  *See, e.g., Morales Lopez v. Baltazar*, 2026 WL 25161 (D. Colo. Jan. 5, 2026).)

## V.   CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 11) is MADE ABSOLUTE and Granillo Chavarria's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief pursuant to Claim 1 of the Petition, and does not reach the other claims asserted by Granillo Chavarria in his Petition;

3. The Motion is DENIED AS MOOT (ECF No. 4);

4. **By no later than this Saturday, March 14, 2026**, the Government shall IMMEDIATELY RELEASE Granillo Chavarria, upon the posting of the bond issued by the IJ, along with all his personal belongings;

5. No onerous conditions of release shall be unilaterally imposed by Respondents on Granillo Chavarria, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

6. Respondents are hereby ENJOINED from removing or transferring, or causing to remove or transfer, Granillo Chavarria from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Granillo Chavarria believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act,  he is GRANTED

11

leave to file a motion seeking the same, along with all supporting documentation, by no later than **April 9, 2026**. The Government shall file a response by no later than **April 30, 2026**, and Petitioner shall file a reply by no later than **May 14, 2026**; and

8. Judgment shall enter in Granillo Chavarria's favor and against the Government on **March 26, 2026,** UNLESS prior thereto the Court is informed that the Government has failed to fully and timely comply with the terms of this Order.

Dated this 12th day of March, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge