**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-0712-WJM

ALFREDO GRANILLO CHAVARRIA,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR AWARD OF ATTORNEY'S FEES PURSUANT TO THE EQUAL ACESS TO JUSTICE ACT**

---

Before the Court is Petitioner Alfredo Granillo Chavarria's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act ("Motion"). (ECF No. 20.) Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez, in his official capacity as Director of the Denver Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security; Todd Lyons, in his official capacity as Acting Director of ICE; and Todd Blanche, in his official capacity as Attorney General of the United States (collectively, "Respondents" or "the Government") filed a response. (ECF No. 27.) Granillo Chavarria filed a reply. (ECF No. 31.)

For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

In February 2026, Granillo Chavarria filed a Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241 challenging the legality of his continued civil immigration detention. (ECF No. 1.) In the Petition, Granillo Chavarria claimed that an Immigration Judge had already granted his request for bond under 8 U.S.C. § 1226(a), but that Respondents nonetheless continued to unlawfully jail him pursuant to 8 C.F.R. § 1003.19(i)(2). (*Id.*) That regulatory provision provides:

> ***Automatic stay in certain cases.*** In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and . . . shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).

The Court ordered Granillo Chavarria's immediate release upon concluding that "the Government's use of the automatic stay regulation offends [Granillo Chavarria's] procedural due process rights." (ECF No. 16 at 10–11.)[1] By the same Order, the Court also granted Granillo Chavarria leave to file a motion for attorney's fees to the extent he believed he had a good faith basis to seek them under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). (*Id.* at 11–12.) Granillo Chavarria timely filed the Motion. (ECF No. 20.)

[1] The Court did not reach Granillo Chavarria's other claims that "the automatic stay regulation also violates [his] substantive due process rights and the [Administrative Procedure Act]." (*Id.*)

## II. ANALYSIS

Granillo Chavarria seeks $16,253 in attorney's fees incurred litigating the Petition and his fee motion. (*Id.*) The Court must consider (1) whether Granillo Chavarria satisfies the EAJA's statutory requirements for a fee award and (2) if so, the appropriate amount of that award.

### A. The Government's Litigation Position Was Not Substantially Justified

The EAJA prescribes that

> a court *shall* award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The Tenth Circuit has held that "habeas actions challenging immigration detention are unambiguously 'civil actions.'" *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025). Thus, Granillo Chavarria is entitled to recover his attorney's fees incurred in these habeas proceedings "if (1) [he] is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Morales Lopez v. Baltazar, et al.,* --- F. Supp. 3d ---, 2026 WL 1587510, at *5 (D. Colo. May 29, 2026) (quoting 28 U.S.C. § 2412(d)(1)(A)).

The Government contests Granillo Chavarria's entitlement to a fee award under the EAJA only on the grounds that its litigation position was substantially justified. (ECF No. 27 at 3.) The Court limits its analysis accordingly. For the reasons explained below, it disagrees with the Government.

The Government bears the burden of showing that its legal position was substantially justified. *See Gilbert v. Shalala,* 45 F.3d 1391, 1394 (10th Cir.1995). To

determine whether the Government's position was substantially justified, courts must look at the "totality of the circumstances, as reflected in the record before the court." *United States v. Charles Gyurman Land & Cattle Co.*, 836 F.2d 480, 485 (10th Cir. 1987). "While the parties' postures on individual matters may be more or less justified," courts should treat the case "as an inclusive whole, rather than atomized line-items." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990). "The test for substantial justification in this circuit is one of reasonableness in law and fact." *Gilbert,* 45 F.3d at 1394. Thus, the Government's position must be "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). The Government's "position can be justified even though it is not correct." *Id.* at 566 n.2. Additionally, the Government's prelitigation actions and litigation position "are both relevant to the inquiry and must be reasonable in fact and law." *Al-Maleki v. Holder*, 558 F.3d 1200, 1207 (10th Cir. 2009) (citation omitted).

In the Motion, Granillo Chavarria argues that neither Respondents' pre-litigation position nor its litigation position were substantially justified. (ECF No. 20 at 5.) However, there is some ambiguity, in the Court's view, as to how the parties are defining those positions. Respondents, for their part, seem to suggest the Court should consider only the reasonableness of their legal position on issues actually resolved by the Court's Order granting the Petition—*i.e.,* Granillo Chavarria's procedural due process claim.[2] Even adopting Respondents' view and limiting its analysis accordingly, the Court cannot conclude their litigation position was substantially justified.

[2] Specifically, Respondents argue Granillo Chavarria's challenge to "the legal basis of DHS's BIA appeal—that he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)"—"is not relevant to the EAJA fee analysis" because "[t]he Court ultimately did not address that

As noted above, the Court ultimately granted the Petition on the grounds that "the Government's application of 8 C.F.R. § 1003.19(i)(2) has violated Granillo Chavarria's procedural due process rights," as guided by its analysis of the three factors set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976). (ECF No. 16 at 4.) Despite the Court's disagreement with the Government's assessment of the *Mathews* factors, the Government asserts "it is not unreasonable to suggest that the burden of a 90-day stay for the purpose of facilitating appellate review of an immigration judge's bond decision is not so grave that it constitutes a violation of due process." (ECF No. 27 at 4.) That is particularly so, it argues, when considering that "aliens unlawfully present in the United States 'are due less process . . . than an ordinary citizen would have.'" (*Id.* (quoting *Miranda v. Garland,* 34 F.4th 338, 361 (4th Cir. 2022)).

The Court is unpersuaded. As Respondents note, by the time Granillo Chavarria filed the Petition in February 2026, district courts across the country were nearly—if not completely—unanimous in finding "that DHS's application of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) violates a non-citizen's due process under the Fifth Amendment" in cases where DHS invoked the automatic stay to continue detaining a non-citizen who had been granted bond by an IJ. *M.P.L. v. Arteta,* 2025 WL 3288354, at *7 (S.D.N.Y. Nov. 25, 2025) (collecting decisions of 50 district courts); *see also J.M.P. v. Arteta,* 807 F. Supp. 3d 265, 288 (S.D.N.Y. 2025) ("To the Court's knowledge, since DHS began regularly invoking the automatic stay provision earlier this year, no district court has held that it comports with due process."); *Vargas Lopez v. Trump,* 802 F. Supp. 3d 1132, 1143 (D. Neb. 2025) ("[N]o district court has concluded in 2025—that

---

issue." (ECF No. 27 at 2 n.1.)

is, since what appears to have been a policy change within the DHS over application of 8 C.F.R. § 1003.19(i)(2)—that the regulation comports with due process."). Indeed, Respondents have not directed the Court to the decision of a single court adopting their view that the application of the automatic stay regulation under analogous circumstances comports with due process.

What's more, while litigation concerning the constitutionality of the automatic stay regulation has proliferated in recent months,[3] the due process concerns surrounding its application to noncitizen detainees like Granillo Chavarria are not new. Based on the Court's research, federal courts have been reaching similar conclusions since at least 2003. *See, e.g., Ashley v. Ridge,* 288 F. Supp. 2d 662, 671 (D.N.J. 2003) ("The Government cannot withstand a procedural due process objection by arguing that due process is provided, then given no import. Indeed, the automatic stay provision nullifies the very purpose of giving aliens procedural protections in deportation proceedings.").

Considering the overwhelming authority rejecting DHS's invocation of the automatic stay provision in cases materially identical to this one—and Respondents' failure to direct the Court to the decision of even a single court condoning its invocation—the Court finds that the Government's litigation position regarding the automatic stay provision lacked substantial justification. *See Pierce,* 487 U.S. at 569

[3] This is, of course, a byproduct of DHS's exponentially increased reliance on the automatic stay regulation under the current presidential administration. *See J.M.P.,* 2025 WL 2984913, at *11 ("The automatic stay provision was rarely employed: between 2015 and 2021, the automatic stay provision was used on average only 26 times a year, on a detained population that numbers in the tens of thousands on any given day, with only two cases being subject to the automatic stay in 2021. . . . But as indicated by the dozens of court cases holding the automatic stay provision unconstitutional in the past few months, the automatic stay is apparently now being used with far more frequency.").

(noting "a string of losses can be indicative" of whether the Government's position lacked substantial justification). As a result, attorney fees under the EAJA are available to Granillo Chavarria.

**B. Fee Amount**

Having concluded that Granillo Chavarria is entitled to an award of fees under the EAJA, the Court considers the appropriate fee amount. The EAJA permits an eligible prevailing party to recover "*reasonable* attorney fees." 28 U.S.C. § 2142(d)(2)(A) (emphasis added). The determination of attorney's fees is ultimately discretionary, especially given the district court's close understanding of the litigation and desire to avoid frequent appellate review of factual matters*. Rocky Mountain Wild v. Vilsack*, 2013 WL 3233573, at *4 (D. Colo. 2013). Nevertheless, the party seeking the award bears the burden of persuading the Court that the amount is reasonable. *Taylor v. Colvin,* 2015 WL 2375907, at *2 (D. Colo. May 15, 2015).

As noted above, Granillo Chavarria requests that the Court award him $16,253 in attorney's fees, which includes $10,584 in fees his counsel incurred litigating his petition for habeas corpus, and $5,669 in fees his counsel incurred litigating his application for fees. (ECF No. 20 at 8.) Respondents do not challenge the reasonableness of the number of hours expended by Granillo Chavarria's counsel. But, they oppose Granillo Chavarria's request "that enhanced rates . . . be awarded for the time spent by attorneys Hans Meyer and Conor Gleason." (*Id.*)

Under the EAJA, fees ordinarily "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The latter "special factor" exception

"refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce,* 487 U.S. at 572. "Examples of the former" include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* "Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed." *Id.*

Importantly, "[i]ncomparable expertise, standing alone, will not justify the higher rate." *Vibra-Tech Eng'rs v. United States,* 787 F.2d 1416, 1420 (10th Cir. 1986). "Rather, the statutory cap may be exceeded only in the 'unusual situation' where the legal services rendered require specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." *Chynoweth v. Sullivan,* 920 F.2d 648, 650 (10th Cir. 1990) (quoting *Vibra-Tech,* 787 F.2d at 1420).

Granillo Chavarria contends that "this case required specialized expertise involving complex immigration litigation experience." (ECF No. 20 at 9.) He directs the Court to authority describing the immigration laws as "second only to the Internal Revenue Code in complexity," *Castro-O'Ryan v. U.S. Dep't of Immigration & Nat.,* 847 F.2d 1307, 1312 (9th Cir. 1987) (citation omitted), and recognizing "that knowledgeable [immigration] attorneys are limited and that immigration issues are often complex and novel," *Barber v. Weber,* 2005 WL 1846985, at *2 (D. Colo. Aug. 1, 2005). And, he submits the declarations of several experienced practitioners in the field of immigration law generally attesting that Meyer and Gleason's specialized knowledge and expertise

is not available at the EAJA statutory rate, even adjusted for inflation. (ECF Nos. 20-4 through 20-7.) Granillo Chavarria further points out that his counsel was the first in this District to litigate the automatic stay issue in *Campos v. Baltazar,* 2025 WL 4083611, at *1 (D. Colo. Nov. 13, 2025). (ECF No. 31 at 9.)

Respondents do not contest that "Petitioner's counsel are highly experienced immigration practitioners." (ECF No. 27 at 7.) But they argue that Granillo Chavarria has failed to explain how their particular expertise was necessary to this litigation. (*Id.*) Considering the "robust body of district court decisions to draw on," Respondents submit that "it is difficult to argue that preparing the automatic stay argument in this case could not have been done absent the high degree of skill and experience claimed by Petitioner's counsel." (*Id.*) Further to the same point, the Court notes that the cases Granillo Chavarria cites where courts awarded prevailing market rates appear distinguishable from this one.

For instance, in *Garcia v. Wamsley,* the district court specifically justified an EAJA fee award at market rates on the basis that counsel's "distinctive knowledge and skill has allowed them to identify detained class members . . . and bring their claims in weekly group petitions that ultimately require far fewer hours than would otherwise be expended were each claim brought individually." 824 F. Supp. 3d 1159, 1169 (W.D. Wash. 2026). This case is, of course, not a class action.

Moreover, the Court pauses to note that in the District of Colorado in 2026 immigration habeas petitioners have been represented by attorneys located throughout the country. Thus, the question of the availability of other counsel expert in the field of immigration law is not properly limited solely to members of the Colorado bar but

should, in the Court's view, be considered in the context of what is, in effect, a nationwide immigration bar.

Balancing Granillo Chavarria's competent evidence that immigration practitioners with Meyer and Gleason's knowledge and expertise are not available at the statutory rate and the Government's legitimate contention regarding the (unfortunate) frequency with which single petitioner habeas petitions like Granillo Chavarria's are now litigated, the Court concludes that an enhanced, blended hourly rate representing the average between the cost-of-living adjusted maximum rate of $261.12[4] and Meyer and Gleason's requested market rates most appropriately serves the interest of justice here. *Cf. Constantinovici v. Bondi,* 2026 WL 2020467, at *3 (S.D. Cal. July 13, 2026) (awarding "a limited enhancement" above the statutory rate).

Accordingly, the Court will apply an hourly rate of $487.56 (the average of $714 and the cost-of-living adjusted rate of $261.12) to the hours expended by attorney Meyer, and an hourly rate of $450.56 (the average of $640 and the cost-of-living adjusted rate of $216.12) to the hours expended by attorney Gleason. This results in a total recovery of (1) $4,436.80 in fees billed by attorney Meyer ($487.56 x 9.1 hours); (2) $5,406.72 in fees billed by attorney Gleason ($450.56 x 12 hours); (3) $2,244.60 in fees billed by attorney Anahi Quezada ($258 x 8.7 hours); and (4) $15 in fees billed by paralegal Jackie Aldrete ($150 x 0.1 hours). (ECF No. 20-2 at ¶¶ 21–22; ECF No. 20-9.)

---

[4] The Government does not appear to oppose a cost-of-living adjusted hourly rate, which it submits would result in a maximum available rate of $261.12 per hour based on the unadjusted national consumer price index. (ECF No. 27 at 5.)

In sum, Granillo Chavarria shall be entitled to his attorney's fees in the amount of **$12,103.12.**

## III. CONCLUSION

For all the reasons set forth above, the Court ORDERS as follows:

1. Petitioner's Motion for Award of Attorney's Fees Pursuant to the Equal Access to Justice Act (ECF No. 20) is GRANTED IN PART and DENIED IN PART;

2. Granillo Chavarria is AWARDED attorney's fees under the EAJA in the total amount of **$12,103.12**; and

3. The Government is ORDERED to make such payment in full to Granillo Chavarria by no later than **September 30, 2026**.

Dated this 26th day of August, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge